**FILED - GR**
October 21, 2025 1:00 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: J◡ / J0-21

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

Case No. _____

FILED UNDER SEAL |

UNITED STATES OF AMERICA
ex rel. MARYANNE KOWALSKI

      Plaintiffs,

v.

MGH FAMILY HEALTH CENTER d/b/a
MUSKEGON FAMILY CARE
      Defendants.

JURY TRIAL DEMANDED

COMPLAINT FOR VIOLATIONS OF
FEDERAL FALSE CLAIMS ACT, 31
U.S.C. SECTIONS 3729(a)(1)(A), (B), (G)

**1:25-cv-1272**
**Jane M. Beckering**
**U.S. District Judge**

## QUI TAM COMPLAINT

NOW COMES *Qui Tam* "Relator," MaryAnne Kowalski, by and through her counsel, Chapman Law Group, brings this action against the Defendants to recover civil penalties and damages arising from the knowing submission of false and fraudulent claims for services to federal healthcare programs, specifically Medicaid/CHAMPS, in violation of the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3732 and of Michigan Medicaid False Claim Act MCL 400.607. This Complaint is filed under seal pursuant to 31 U.S.C. § 3730(b)(2) to recover all damages, penalties, and other remedies established by the FCA on behalf of the United States and Relator and would show the following:

### I.    INTRODUCTION

1.    This action seeks redress for a scheme perpetrated by MGH Family Health Center d/b/a Muskegon Family Care ("MFC") and its senior management and Board of Directors,

1

resulting in the submission of false claims to the State of Michigan's Medicaid program (Community Health Automated Medicaid Processing System, or "CHAMPS").

2.      The scheme involves the routine and knowing billing for behavioral health services provided by unlicensed, limited licensed, and/or federally ineligible individuals by falsely designating a cleared supervising provider's National Provider Identifier (NPI) as the primary rendering provider on claims submitted for reimbursement.

3.      This practice allowed MFC to receive millions of dollars in Medicaid reimbursement for services that were medically non-compliant and statutorily ineligible for payment. MFC's executives—including the CEO, CFO, CHRO and COO—were explicitly notified of the illegal billing and the felony and misdemeanor backgrounds of specific providers and allegedly refused to cease the submission of false claims or repay the government funds already improperly received, in direct violation of the federal False Claims Act, 31 U.S.C. Sections 3729 – 3732, in violation of the federal False Claims Act, 31 U.S.C. Sections 3729 – 3732.

## II.    JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1345 and 31 U.S.C. § 3732(a) and (b).

5.      This Court has personal jurisdiction over the Defendant pursuant to 31 U.S.C. § 3732(a) because Defendant can be found in and transact business in this Jurisdiction, and portions of the violations of the FCA described herein were carried out in this district.

6.      Venue is proper, among other reasons, in this district pursuant to 28 U.S.C. § 1391(a) because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

7.      Pursuant to 31 U.S.C. § 3730, this Complaint is to be filed in camera and remain under seal for a period of at least sixty (60) days, unless the Government requests an extension.

8.      Relator has direct and independent knowledge, within the meaning of 31 U.S.C. § 3730(4)(B), of the information on which the allegations set forth in this Complaint are based. Relator is the original source of, and has direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based and has voluntarily provided such information to the Government before filing this action.

### III.    THE RELATOR

9.      Relator MaryAnne Kowalski is a citizen of the United States of America and is a resident of the State of Michigan, residing at 15736 River Side Drive, Spring Lake, MI 49456. Relator has experience in the health care industry and works for MFC as the Behavioral Health Director.

10.     In her capacity as the Behavioral Health Director,. she had direct, independent, and primary knowledge of the providers employed within the behavioral health unit, their credentials, the required Medicaid (CHAMPS/LARA) reporting obligations, and the internal billing practices used for reimbursement.

11.     While work for the Defendants, Relator gained personal first-hand knowledge regarding various violations and acts of non-compliance with federal statutes and regulations as described below.

### IV.    THE DEFENDANTS

12.     Muskegon Family Health Center d/b/a Muskegon Family Care (MFC) is a Federally Qualified Health Center (FQHC) located at 2201 S. Getty Street, Muskegon Heights, MI 49444, and is a participating provider in the Medicaid/CHAMPS program.

3

## V.    KEY INDIVIDUALS

13.    Kathy Covington is identified as the President/Chief Executive Officer (CEO) of MFC. Ms. Covington was personally notified by the Relator on multiple occasions regarding the illegal billing practices and ineligible providers.

14.    Bunny Punches is identified as the Chief Financial Officer (CFO) of MFC. Ms. Punches was personally notified by the Relator and specifically instructed to discontinue billing for an unlicensed provider, yet she allegedly failed to respond or take action.

15.    Laurie Carter is identified as the Chief Operations Officer (COO) of MFC. Ms. Carter was personally notified by the Relator of the improper billing and admitted that limited licensed providers had not been cleared through CHAMPS yet suggested that the claims were acceptable.

16.    Franklin Wilcox is identified as the Chief Human Resources Officer (CHRO) of MFC. Mr. Wilcox was notified by the Relator regarding the need to report an offense for a provider not enrolled with Muskegon Family Care provider was present in a meeting where the billing non-compliance was confirmed.

## VI.    THE FRAUDULENT SCHEME

17.    Federal and state Medicaid rules mandate specific clearance and reporting requirements through the Licensing and Regulatory Affairs (LARA) and CHAMPS for health care providers, particularly those operating under limited licenses or as recovery coaches, to ensure they are eligible to be reimbursed by the federal program. A misdemeanor offense, such as the one held by one provider, must be reported to CHAMPS within 30 days of sentencing. Furthermore, providers with certain felony convictions may be ineligible for participation in federal programs.

4

18. The Relator's investigation revealed that specific behavioral health staff, including Rachael Overkamp (Limited Licensed Social Worker), Lesley Cody (Limited Licensed Master Social Worker), Kayla Sabo(Limited Licensed Master Social Worker), and Peer Recovery Coaches Pam Montgomery and Derrick Burris, were never cleared through CHAMPS as a Muskegon Family Care employee.

19. The investigation specifically revealed that Rachael Overkamp had a legal record including an OWI and a charge of False Pretenses (pled down from a felony embezzlement charge from a vulnerable adult) that should have been reported to LARA and CHAMPS.

20. Even more egregiously, the Peer Recovery Coach Derrick Burris was found to have multiple felonies and is listed as a habitual offender. His criminal background would likely disqualify him from CHAMPS clearance and, therefore, from providing services reimbursable by Medicaid.

21. To bypass the necessary CHAMPS clearance process and ensure payment for services rendered by these ineligible providers, MFC's billing department engaged in a fraudulent practice. Specifically, the services provided by these limited licensed providers and peer recovery coaches were billed under the NPI of the supervising provider, the Relator, MaryAnne Kowalski, as the "rendering provider".

22. This practice was implemented to prevent claims from being rejected, as explicitly noted by a member of the Human Resources staff: the claims were acceptable because "no limited licensed staff had been cleared through CHAMPS because they were being billed under her NPI".

23. This method falsely represented to the government the identity and eligibility of the professional who actually rendered the services, making the submitted claims materially false and fraudulent under federal law.

24. The Defendants, through their senior leadership, were made explicitly aware of this non-compliant and fraudulent scheme but allegedly failed to stop the submission of claims or repay the improperly received funds, acting with at least deliberate ignorance or reckless disregard of the falsity.

25. Notification to CFO (Bunny Punches) and CHRO (Franklin Wilcox): On June 30, 2025, the Relator informed CFO Bunny Punches and CHRO Franklin Wilcox that Rachael Overkamp had an offense that should have been reported to LARA and CHAMPS, and followed up via email on July 1, 2025, instructing the CFO to discontinue any billing for Rachael Overkamp until clearance was verified. No response was received from either officer.

26. Notification to CEO (Kathy Covington): On July 3, 2025, the Relator informed CEO Kathy Covington of her concerns regarding Overkamp's status. On July 7th, 2025, the relator informed the Compliance Officer Darleen Scott of her concerns regarding the Overkamp's status and the billing under the Relator's NPI.

27. During a meeting on or about July 31, 2025, the Relator met with CEO Kathy Covington and expressed concern that the agency could owe money back to the government due to improper billing. Ms. Covington's alleged response, "We'd have to find something to give the money back," demonstrates an intent to conceal the overpayment rather than fulfill the statutory obligation to report and return the money.

28. Confirmation of Systemic Failure: On September 8, 2025, COO Laurie Carter confirmed to the Relator that no limited license providers had been cleared through CHAMPS. Despite this confirmation that a large number of claims were based on non-compliant providers, Ms. Carter allegedly implied the claims were acceptable since they cleared with "MFC" on the claim.

6

29.     Failure to Stop Billing: On September 5, 2025, the Relator and the Behavioral Health Manager wrote an email to CEO Kathy Covington, CFO Bunny Punches, CHRO Franklin Wilcox, and the biller, specifically demanding that the billing under the Relator's NPI stop until all limited licensed staff were cleared through CHAMPS, explaining that the rendering provider NPI was required. No response was received.

30.     On September 6, 2025, the Relator wrote an email to CEO Kathy Covington, CFO Bunny Punches, CHRO Franklin Wilcox, and the biller, specifically demanding that the billing for peer recovery coaches under the Relator's NPI stop until they were cleared through CHAMPS, explaining that the rendering provider NPI was required. No response was received.

31.     On September 15, 2025, the Relator attended a meeting with, Kathy Covington, Bunny Punches, Frank Wilcox, and Laurie Carter. Also in attendance was Christina Diaz-Flores a mental health manager as she also had non credentialed limited license providers being billed under her name. During this meeting Laurie Carter confirmed to that no limited license providers had gone through Champs.

32.     Based on Laurie Carter's statements on the 15th, other limited licensed staff that are currently at MFC, that are being billed under another supervisor Christina Diaz-Flores are, Barbara Versalles, LLPC and Marion Oakes, LLPC.

33.     The Previous staff at MFC with limited licenses that provided treatment at MFC and who were not cleared through CHAMPS: Gwen Melton, Rachel McClure LLMSW, Becky (Becca) Burr LLMSW, Joshua Dekker LLMSW, Cindy Casey LLMSW, Alicia Dortch LLMSW, Katey Gonzales LLMSW, Christina Diaz-Flores, LLMSW, Anthony Combs and Ja'Liyah Walker.

34.     The ongoing failure of senior management, after repeated warnings, to stop the submission of claims and to report the systematic failure of provider clearance constitutes knowing submission of false claims and the deliberate avoidance of an obligation to the Government.

## VII.    CAUSES OF ACTION

### COUNT 1: Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) (Presenting a False Claim)

35.     The Defendants, through the acts described above, knowingly presented or caused to be presented false or fraudulent Medicaid/CHAMPS claims for payment or approval.

36.     The claims were materially false because they falsely represented that the services were rendered by a provider who met all federal and state requirements, including LARA and CHAMPS clearance, when in fact, the services were rendered by ineligible individuals and improperly billed under the supervising provider's NPI.

37.     By reason of these acts, the United States Government has been damaged in an amount to be determined at trial.

### COUNT 2: Violation of the False Claims Act, 31.S.C. § 3729(a)(1)(B) (Making a False Record or Statement)

38.     The Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, specifically the claims forms that falsely identified the "rendering provider" by listing the supervising provider's NPI as the rendering NPI to bypass regulatory safeguards.

39.     This false record-keeping and misrepresentation was material because the government would not have reimbursed the claims had it known the true identity and regulatory status (lack of CHAMPS clearance or felony background) of the individual rendering the service.

8

## COUNT 3: Violation of the False Claims Act, S.C. § 3729(a)(1)(G) (Reverse False Claims)

40. The Defendants knowingly concealed or improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

41. After being explicitly notified that claims submitted for services provided by ineligible providers were improper and that the agency could owe money back, the CEO, CFO, CHRO and COO refused to cease the illegal billing, failed to report the systemic non-compliance to CHAMPS/LARA, and failed to initiate an investigation or repayment process.

42. The failure to return funds improperly paid by the government for non-compliant claims, coupled with the management's alleged intent to avoid finding funds to repay, constitutes the knowing avoidance of a statutory obligation to refund the fraudulently obtained funds.

## COUNT 4: Violation of Michigan Medicaid False Claim Act ( et seq.)

43. The Michigan Department of Health and Human Services (MDHHS) require, pursuant to federal law (42 CFR 438.602(b)), that all providers who render services to Medicaid beneficiaries must be enrolled in the Community Health Automated Medicaid Processing System.

44. The claim forms (e.g., CMS-1500), electronically submitted to  for reimbursement, require the identification of the Rendering Provider (the individual who performed the service) and the Billing Provider (the entity submitting the claim). By submitting a claim with the National Provider Identifier of an enrolled provider when the services were, in fact, rendered by a different, individual, a provider not enrolled with Muskegon Family Care the Defendants knowingly made a false statement regarding the identity of the actual provider.

45. The claim is false because it represents that the service was provided by a legally authorized and enrolled  participant, when in fact it was not. Had the claim correctly identified the

9

provider not enrolled with Muskegon Family Care, it would have been rejected by the system. MDHHS explicitly considers "changing any physician on the claim to bypass the edit" to be fraudulent billing.

46.    The enrollment status of the rendering provider is a material condition of payment. The state will not pay for services provided by a provider not enrolled with Muskegon Family Care. The false identification of the enrolled provider was the prerequisite of the payment, meaning the State would not have paid the claim absent the false statement.

47.    The Defendants' conduct of systematically billing services performed by a provider known to be a provider not enrolled with Muskegon Family Care under the NPI of an enrolled provider demonstrates the requisite level of knowledge under.

48.    The scheme itself is designed to circumvent the explicit enrollment requirements enforced by the system.

49.    This calculated pattern of misrepresentation establishes, at a minimum, deliberate ignorance or reckless disregard for the truth of the information submitted on the claim forms.

50.    This knowing submission of false claims for the purpose of receiving benefits from the State violates MCL 400.607.

51.    For each violation of the MMFCA, the State of Michigan is entitled to recover substantial damages and penalties, including:

    a) Civil Penalty: Not less than $5,000.00 or more than $10,000.00 per false claim.

    b) Treble Damages: Up to three times the amount of the damages sustained by the state.

    c) Costs: The State is entitled to all of its costs, including expenses and reasonable attorney fees.

10

## VIII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Relator MaryAnne Kowalski respectfully requests that this Court enter judgment against Defendants, ordering: (1)That the Defendants cease and desist from violating the False Claims Act. (2) That this Court enter judgment against Defendants for three times the amount of damages the United States has sustained because of the Defendants' actions, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729.(3) That Relator be awarded the maximum amount allowed pursuant to Section 3730(d) of the FCA. (4)That Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs. (5) That the United States and Plaintiff-Relator recover any other relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Relator on behalf of Plaintiff hereby demands a trial by Jury.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: October 17, 2025

*s/Jonathan C. Lanesky*
Ronald W. Chapman Sr., M.P.A., LL.M. (P37603)
Jonathan C. Lanesky (P59870)
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jlanesky@chapmanlawgroup.com
*Attorneys for Qui Tam Relator*

11

## CERTIFICATE OF SERVICE

I, Jonathan C. Lanesky, hereby certify that the foregoing Complaint for Violations of the False Claims Act was mailed to the Court via First Class Mail on October 17, 2025, but was not served on the Defendants pursuant to 31 U.S.C. 3730(b)(2) which provides that, "The Compliant shall be filed in camera…. and shall not be served on the defendant until the court so orders. Relator will serve the Complaint on Defendants when so ordered by the Court.

Dated: October 17, 2025                    *s/Jonathan C. Lanesky*
                                           Jonathan C. Lanesky
                                           Counsel for Plaintiff-Relator MaryAnne Kowalski

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served October 17, 2025 *via FIRST CLASS MAIL* to the Attorney General of the United States, Pamela Bondi, at the Department of Justice, Civil Division, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, Timothy VerHey, United States Western District of Michigan Attorney, U.S. Attorney's Office, P.O. Box 208, Grand Rapids, MI 49501-0208 and Michigan Attorney General Dana Nessel, Department of Attorney General, 525 W. Ottawa St. , Lansing, MI 48906.

                                           *s/Jonathan C. Lanesky*
                                           Jonathan C. Lanesky
                                           Counsel for Plaintiff-Relator MaryAnne Kowalski



CERTIFIED MAIL

9589 0710 5270 2085 5455 41



**F** | $12.98 US POSTAGE IMI<br>7 OZ FIRST-CLASS MAIL FLATS RATE<br>ZONE 2<br>RETAIL | Stamps.com<br>063S0001443245<br>5105392<br>FROM 48098

10/17/2025

# USPS FIRST CLASS MAIL®

CHAPMAN LAW GROUP
1441 W LONG LAKE RD STE 310
TROY MI 48098-4476

C040



SHIP TO:
WESTERN DISTRICT OF MICHIGAN
110 MICHIGAN ST NW STE 399
GRAND RAPIDS MI 49503-2317

## USPS CERTIFIED MAIL™



9414 7111 0549 5856 0965 11



