**1**

# Sworn Statements of MaryAnne Kowalski

I, MaryAnne Kowalski, being of sound mind and over the age of eighteen, do hereby declare under penalty of perjury that the following statements are true and accurate to the best of my knowledge, recollection, and belief.

1. On or about June 26, 2025, MFC staff member Gwen Melton (therapist) and on and June 27, 2025, Christina Diaz-Flores(Behavioral Health Manager) identified that limited licensed social worker Rachael Overkamp has a legal record. They expressed uncertainty as to whether this record was reported to LARA (Licensing and Regulatory Affairs)or CHAMPS (Community Health Automated Medicaid Processing System).
2. I confirmed that Rachael Overkamp's legal record includes an OWI (Operating While Intoxicated) and a charge of False Pretenses less than $200, which was pled down from a Felony embezzlement charge from a vulnerable adult ($1,000 or less than $20,000), as per an ICHAT report I requested.
3. On June 30, 2025, I contacted the company's CFO, Bunny Punches, and the Chief Human Resources Officer, Franklin Wilcox informing them that Rachael Overkamp had an offense that should have been reported to LARA and CHAMPS. I received no response from either officer.
4. On July 1, 2025, I informed Bunny Punches via email to discontinue any billing for Rachael Overkamp until I received verification that she was cleared from CHAMPS and LARA. I provided Ms. Punches with copied information from the Medicaid manual indicating that a misdemeanor offense must be reported to CHAMPS within 30 days of sentencing. I received no response from Ms. Punches.
5. On July 3, 2025, I contacted CEO Kathy Covington regarding my concerns about Rachael Overkamp's status with LARA and CHAMPS. Ms. Covington indicated she would gather more information.
6. On July 7, 2025, I contacted the compliance office Darlene Scott, informing her of my concerns that the billing was potentially fraudulent.
7. On July 8, 2025, I sent an email to Ms. Covington stating that I could no longer supervise Rachael Overkamp.
8. On July 9, 2025, Ms. Covington emailed back and directed me to stop supervising Rachael Overkamp. On the same day, Rachael Overkamp was told by Franklin Wilcox, CFO, that she was on a paid leave of absence.
9. On July 11, 2025, I reported Rachael Overkamp to LARA.
10. On or around July 31, 2025, I met with Kathy Covington to discuss the situation, and I expressed my concern that the agency could owe money back (due to improper billing). Ms. Covington's response was, "We'd have to find something to give the money back," and she then left my office.
11. On August 25, 2025, after receiving a letter from LARA regarding an investigation, I contacted Kathy Covington, Frank Wilcox, and Bunny Punches. I requested verification as to whether CHAMPS had been contacted in accordance with Medicaid rules. I received no response from any of them.
12. On August 29, 2025, I received an email from Brandy Williams (biller) indicating that Peer Recovery Coaches were being billed under my NPI (National Provider Identifier).

13. On September 5, 2025, during a conversation with HR employee Ashlee Koone, Behavioral Health Manager Christina Diaz-Flores and I asked for a status update on Rachael Overkamp. Ashlee Koone stated that Brandy Williams had told her it was not an issue because no limited licensed staff had been cleared through CHAMPS because they were being billed under my NPI.

14. Also on September 5, 2025, Christina Diaz-Flores and I wrote an email to Kathy Covington, Frank Wilcox, Bunny Punches, and Brandy Williams to stop billing under us until all limited licensed staff were cleared through CHAMPS. This email explained that a rendering provider should have been put on the claims, as well as the supervising provider. No response was received.

15. On September 5, 2025, I received a telephone call from COO Laurie Carter. I provided her with the history of the situation, and she indicated she would have an answer for me on the following Monday, September 8.

16. On September 8, 2025, I sent emails to Christina Diaz-Flores, Kathy Covington, Bunny Punches, Frank Wilcox, and Laurie Carter, expressing my concern that the peer recovery coaches were also being billed under my NPI and should also be cleared through CHAMPS.

17. On September 8, 2025, Pam Montgomery emailed me stating she does not have an NPI. I then emailed Brandy Williams, indicating I did not know how Ms. Montgomery could be billed under me without an NPI. No response was received from Brandy Williams.

18. On September 8, 2025, I conducted an ICHAT report on recovery coach Derrick Burris and verified that he has multiple felonies and is listed as a habitual offender who got off parole in January 2025.

19. On September 8, 2025, I met with Laurie Carter, who stated that Brandy Williams told her no limited licensed provider had been cleared through CHAMPS. Ms. Carter stated she thought the claims were acceptable since they had "MFC" on the claim and cleared for billing. I informed her that my understanding was that they needed to have the rendering provider NPI and my supervising provider NPI to be correct.

20. Also on September 8, 2025, after speaking with Ms. Carter, I called CHAMPS and spoke with a worker named Joanne, who verified that the claims had to include the rendering provider's NPI as well as my NPI as the supervising provider.

21. Ms. Carter asked me to email limited licensed clinicians to fill out the provider electronic signature agreement cover sheet so Brandy Williams could check if they were in CHAMPS. I expressed my concern that the issue was the failure to list them as the rendering provider with their NPI on the claim.

22. I also told Ms. Carter that I believed other people on my team had records, specifically mentioning Derrick Burris and Lesley Cody. I stated that Lesley Cody had disclosed a Minor in Possession charge from when she was 20, which I believed would be okay for CHAMPS, but that I did not believe Derrick Burris would clear CHAMPS due to his multiple felonies.

23. Per Laurie Carter's request, I sent an email to staff asking them to fill out the CHAMPS provider electronic signature form and return it to Brandy Williams by September 11, 2025.

24. On September 15, 2025, I attended a meeting with, Kathy Covington, Bunny Punches, Frank Wilcox, and Laurie Carter. I also invited Christina Diaz-Flores as a witness as she

also has limited license providers being billed under her name.  During this meeting Laurie Carter confirmed to that no limited license providers had gone through Champs.

Conclusion of Beliefs

25. I believe that three limited licensed social workers (Rachael Overkamp LBSW, Lesley Cody LLMSW, and Kayla Sabo LLMSW) and two peer recovery coaches (Pam Montgomery and Derrick Burris) were never cleared through CHAMPS.
26. I believe these individuals were likely billed under me as the rendering provider since the claims were not rejected.
27. I believe that the practice of not clearing limited licensed professionals through CHAMPS has been ongoing for at least as long as the current biller, Brandy Williams, has been in her position, which would be about three years.

I declare under penalty of perjury that the foregoing is true and correct.

MarryAnne Kowalski

10-16-25
Date

STATE OF MICHIGAN          §
                          §
OTTAWA COUNTY             §

This instrument was signed before me on the 16th day of October 2025 by MarryAnne Kowalski..

Notary Public, State of Michigan

Cody William Mckendry
Printed Name of Notary

Cody William McKendry
Notary Public of Michigan
Ottawa County
Expires 10/24/2025
Acting in the County of Ottawa

My Commission Expires: 10-24-2025